[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Waterbury. Many of the facts that give rise CT Page 13950 to this action are not in dispute. The plaintiff whose maiden name is Nancy A. Boeckel and the defendant were married on December 21, 1991 at Newtown, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of this marriage and no minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the defendant's conduct is the sole cause of the breakdown of the marriage.
The plaintiff was born on June 16, 1953. The plaintiff is in fine health. The plaintiff's employment does not provide health benefits at the present time. The cost for her to have COBRA benefits under the defendant's health insurance would be $244 monthly for the State Blue Care Point of Service plan.
The plaintiff is employed as an office manager for a real estate firm. Her gross weekly income is $792. She also has an average weekly bonus income of $100 for a combined total gross weekly income of $892. She owns household furniture, a tractor and jewelry with an unknown value. She has $30 in bank accounts. She owns a 1997 Subaru with a total value of $10,650 and a loan balance of approximately $4,429 with an equity of approximately $6,220. The loan balance is in both the plaintiff and the defendant's name.
The parties filed a joint bankruptcy petition on June 27, 1998. As a result of their discharge in bankruptcy a total of $85,169.96 in unsecured non-priority claims was discharged. A substantial amount of the unsecured claims that were discharged were for medical services rendered to the plaintiff. The parties had believed that the plaintiff was covered by health insurance at the time the medical services were rendered but it was subsequently determined that there was no health insurance. The plaintiff elected not to discharge various credit card liabilities. At the present time she has an Express charge card with a balance of $1,060 all of which could have been discharged in bankruptcy. She also has an Annie Sez charge card with a balance due of $520, a couple hundred dollars of which could have been discharged in bankruptcy. She has a Casual Corner charge card with a balance due of $700 of which approximately $300 could have been discharged in bankruptcy. She has a Filene's charge card with a balance due of $700 of which approximately $400 could have been discharged in bankruptcy. She also has the following liabilities that did not exist at the time of bankruptcy: Radio Shack with a balance of $198; CT Page 13951 Visa with a balance of $1700; Cramer Anderson for the pending dissolution action with a balance of $20,608.33, having paid her attorneys a total of $2,000 to date; Capitol One with a balance of $200; Taxes for the calendar year 1999 for which she filed a separate tax return with a balance of $2,757 and Michael Patten, CPA with a balance of $225.
The parties own a family home at 1111 Purchase Brook Road, Southbury, Connecticut. The court finds that the fair market value of the home is $160,230 and that it has a mortgage with a balance of $112,316 and an equity of $47,914. The family home was purchased in 1994. There was an approximate $43,000 down payment used for the purchase of the home that came from the sale of a home that the defendant previously owned with his first wife. The closing costs to purchase the family home came from a loan from the defendant's mother. The purchase price of the family home was between $162,000 and $163,000.
The parties own a timeshare in Jamestown, Rhode Island. The parties are in the dispute as to the total value of the time share. The court finds that its total value is $7,450, that it has a mortgage of approximately $4,000 and an equity of approximately $3,450.
The defendant was born on March 7, 1951. The defendant is a diabetic that is controlled by medication he takes. While he believes that he has Parkinson's Disease the court finds that no credible evidence has been presented that he, in fact, has Parkinson's Disease. The defendant also suffers from Sleep Apnea.
The defendant is employed as a comptroller at a University. His gross weekly income is $1,441. He commenced his present employment on February 1, 1999. He has liabilities consisting of the following: a. Seafirst Bank regarding the Time Share for which there is a balance due of approximately $4000; b. Mastercard with a balance due of $300; c. Visa card with a balance due of $1600; d. Cemetery plot with a balance due of $1,600; e. Attorney Marcus V. Hallum with a balance due of $9,500. Although not shown on his financial affidavit as an asset he owns a cemetery plot with a total value of $2000. This was purchased in November 1999. The equity in the plot is approximately $400. He presently leases his automobile. The plaintiff and the defendant both co-signed the lease. He has bank accounts totaling $370. He owns stocks and bonds with a total value of $552. Although not shown on his financial affidavit he has two life insurance policies, one through the State of Connecticut in the face amount of $30,000 that he does not pay any premium for. He also has a Kemper Life Insurance policy in the face amount of $100,000 with a $6 weekly premium. Although not shown on his financial affidavit he has a joint savings and checking account with his mother. All of the money in CT Page 13952 that account came from his mother. He has a balance in a CD with his mother of $17,822.
On July 20, 1999, the same date that the divorce papers were served upon the defendant and after they had been served on him, he withdrew $8,208.18 from an IRA. He also withdrew on July 20, 1999, the full balance of $330.74 that was held in a separate account after the divorce papers were served on him. Shortly after telling his wife that he wanted a divorce, the defendant withdrew approximately $2,000 from joint savings and used it for vacation for himself and his girlfriend.
He has a TIAA/CREF Pension Plan with a value of $10,000. He also has a United Technology Pension plan. The United Technology pension plan has a number of forms of benefit payment including the following based on his commencing to collect his pension benefit on April 1, 2013 at age 62:
Form of benefit payment Monthly benefit
Single Life Annuity $1,418.13 50% Contingent Annuity $1,254.84 66 2/3% Contingent Annuity $1,208.46 100% Contingent Annuity $1,125.27 5 Year Certain Life $1,396.59 10 Year Certain Life $1,338.46
With all of the forms of benefit payment, in the event the defendant dies prior to the time the pension payments commence then there would be no payments. The present value of his pension plan based on a single life annuity option and based on his retiring at age 62 is $71,874. He commenced employment with United Technologies on January 4, 1979. His period of credited service for pension benefits is January 4, 1979 to June 30, 1992.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS
A. By way of dissolution of marriage
 1. The marriage between the parties is dissolved and each party is declared to be single and unmarried. CT Page 13953
B. By way of Alimony
 1. No periodic or lump sum alimony is ordered to be paid by either party to the other. The defendant is ordered to pay by way of alimony one-half of the cost for the plaintiff for COBRA benefits for the maximum period allowed by law in the event she elects such benefits. The provisions of § 46b-86 (a) and 46b-86 (b) are applicable to this order.
C. By way of property orders
 1. The defendant is ordered to quit-claim to the plaintiff by December 13, 2000, all of his right, title and interest in the family home located at 1111 Purchase Brook Road, Southbury, Connecticut. The plaintiff is to make the payments on the mortgage and hold the defendant harmless. The plaintiff is ordered to quit-claim to the defendant all of her right, title and interest in the Jamestown, Rhode Island time share by December 13, 2000. The defendant is to make the payments on the mortgage and hold the plaintiff harmless.
 2. The 1997 Subaru is awarded to the plaintiff. Any interest that the defendant may have in it, is to be transferred to the plaintiff by December 13, 2000. She is to pay the loan balance and hold the defendant harmless.
 3. All household furniture and furnishings, tractor and jewelry in the possession of the plaintiff is awarded to the plaintiff.
 4. The bank account shown on the plaintiff's financial affidavit is awarded to the plaintiff.
 5. The plaintiff is to pay all the liabilities shown on schedule A to her financial affidavit and hold the defendant harmless.
 6. The defendant is to pay all the liabilities shown on his financial affidavit and hold the plaintiff harmless.
 7. The cemetery plot owned by the defendant is awarded to the defendant.
 8. All household furniture and furnishings and tools in the possession of the defendant are awarded to the defendant.
 9. The bank accounts shown on the defendant's financial affidavit are awarded to the defendant. In the event any of the bank accounts shown on the parties financial affidavits continue to be in joint names then CT Page 13954 such joint named bank accounts are ordered divided equally between the parties. The plaintiff is not awarded any interest in the accounts that the defendant has with his mother.
 10. The stocks and bonds shown on the defendant's financial affidavit are awarded to the defendant.
 11. The defendant is ordered to name the plaintiff as beneficiary of his $100,000 Kemper Life Insurance until such time as she commences to receive payment under his United Technologies Retirement Plan.
 12. The TIAA/CREF Plan shown on the defendant's financial affidavit is awarded to the plaintiff. The defendant is to transfer that full fund to her in an amount of not less than $10,000 by December 13, 2000. In the event there is less than $10,000 in that plan then he is to pay the difference to her within sixty days from the date of this order.
 13. The court orders that the defendant elect a 100% contingent annuity form of benefit payment to retire when he reaches age 62 under his United Technology Retirement Plan with the plaintiff to be the contingent beneficiary. During the lifetime of the defendant commencing with his age 62 the plaintiff is to receive 20% of the monthly benefit under that plan.
 14. The defendant is to hold the plaintiff harmless regarding the automobile lease payments on the vehicle he operates.
B. By way of Attorney's fees
1. No attorney's fees are awarded in favor of either party.
C. Miscellaneous Orders
 1. Counsel for the plaintiff is ordered to prepare the QDRO at the plaintiff's expense. The court retains jurisdiction over any dispute that may arise over the language of the QDRO.
 2. All pendente lite orders remain in effect until the date this decision is filed and in the event there is any arrearage arising from such pendente lite orders such arrearage is not merged into the judgment.
 3. The parties are to exchange copies of their federal and state income tax returns for so long as the defendant is obligated to pay part of the COBRA costs for the plaintiff.
 ___________________, J. AXELROD
CT Page 13955